## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GFI MANAGEMENT SERVICES INC., GFI HOSPITALITY LLC, GFI DEVELOPMENT COMPANY LLC, GFI CAPITAL RESOURCES GROUP INC., AND BROADWAY CONSTRUCTION GROUP LLC,<br><br>       Plaintiffs,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION; AND ISABELLA CASILLAS GUZMAN, Administrator of the UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>       Defendants. | Case No. 24-cv-09317-LGS<br><br><br>**AMENDED COMPLAINT AND PETITION FOR JUDICIAL REVIEW** |

Plaintiffs, GFI Management Services Inc. ("**GFI Management**"), GFI Hospitality LLC ("**GFI Hospitality**"), GFI Development Company LLC ("**GFI Development**"), GFI Capital Resources Group Inc. ("**GFI Capital Resources**"), and Broadway Construction Group LLC ("**Broadway Construction**") (collectively "**Plaintiffs**"),[1] file this Complaint and Petition for Judicial Review of the Orders of the Office of Hearings and Appeals ("**OHA**") denying Plaintiffs' appeals of Paycheck Protection Program ("**PPP**") loan review decisions issued by the United States Small Business Administration ("**SBA**") and allege as follows:

---

[1] When using the term "Plaintiffs" regarding the First Draw PPP loans, the term includes GFI Management Services Inc., GFI Hospitality LLC, GFI Development Company LLC, GFI Capital Resources Group Inc., and Broadway Construction Group LLC. When using the term "Plaintiffs" regarding the Second Draw PPP loans, the term includes GFI Management Services Inc., GFI Hospitality LLC, GFI Development Company LLC, and Broadway Construction Group LLC.

## INTRODUCTION

This action seeks judicial review of the SBA's final decisions that unlawfully failed to forgive PPP loans issued to Plaintiffs during the COVID-19 pandemic under the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**") and Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "**Economic Aid Act**").  In denying PPP loan forgiveness, the SBA miscalculated the number of Plaintiffs' employees at the time of the PPP loan applications in direct contravention of the statute and controlling regulations.  Specifically, contrary to the SBA's calculations, Plaintiffs (1) had less than 500 employees at the time of their PPP applications for First Draw Loans made available under the CARES Act; and (2) had less than 300 employees at the time of their PPP applications for Second Draw Loans made available under the Economic Aid Act.  Because Plaintiffs met the employee size standard, and all other requirements, they were eligible for loan forgiveness and the SBA's final decisions finding otherwise have no basis in fact, are arbitrary and capricious, an abuse of discretion and not otherwise in accordance with applicable law.  Accordingly, each decision should be vacated and set aside with direction to the SBA to approve forgiveness of Plaintiffs' First Draw and Second Draw PPP loans.

## PARTIES

1.      Plaintiff, GFI Management, is a New York corporation that specializes in multi-family property management.

2.      Plaintiff, GFI Hospitality, is a Delaware limited liability company that has ownership interests in hotels in multiple states.

3.      Plaintiff, GFI Development, is a New York limited liability company that develops hospitality, residential, and commercial real estate.

4.      Plaintiff, GFI Capital Resources, is a New York corporation that develops, owns, and operates mixed-use properties.

5.      Plaintiff, Broadway Construction, is a New York limited liability company that specializes in residential, hospitality, commercial and retail construction projects.

6.      Defendant, SBA, is a federal agency created and governed by 15 U.S.C. § 633, et seq.  The CARES Act authorized the SBA to administer the PPP.

7.      Defendant, Isabella Casillas Guzman, is the Administrator of the SBA and is being sued solely in her official capacity.  15 U.S.C. § 634(b)(1). Because she has the final authority for administering the PPP within the SBA, she is the proper defendant for causes of action brought under the Administrative Procedures Act ("**APA**").

## VENUE AND JURISDICTION

8.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the CARES Act and its implementing regulations.

9.      SBA regulations, specifically 13 C.F.R. § 134.1211(g), provides that the agency's "[f]inal decisions may be appealed to the appropriate Federal district court."

10.     The SBA's decisions in this matter related to the First Draw Loans became final on October 7, 2024 and February 24, 2025, 30 days after the OHA's September 6, 2024 Reconsidered Initial Decisions and January 23, 2025 Decision were issued affirming the SBA's loan review decisions finding Plaintiffs ineligible for loan forgiveness.  Plaintiffs have exhausted all administrative remedies, 13 C.F.R. § 134.1211(g), and SBA's issuance of these final decisions on October 7, 2024 and February 24, 2025 constitute final agency action that is judicially reviewable under the APA.  *See* 5 U.S.C. §§ 704, 706.

11.    The SBA's decisions in this matter related to the Second Draw Loans became final on October 11, 2024, 30 days after the OHA's September 11, 2024, Reconsidered Initial Decisions were issued affirming the SBA's loan review decisions finding Plaintiffs ineligible for loan forgiveness.  Plaintiffs have exhausted all administrative remedies, 13 C.F.R. § 134.1211(g), and SBA's issuance of these final decisions on October 11, 2024 constitute final agency action that is judicially reviewable under the APA.  *See* 5 U.S.C. §§ 704, 706.

12.    Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(e) because (a) Plaintiffs, GFI Management and GFI Capital Resources, maintain their principal places of business and the PPP loan funds were remitted to them in this judicial district; and (b) Plaintiffs, GFI Hospitality, GFI Development, and Broadway Construction received PPP loan funds in this judicial district and are limited liability companies who each have members that are New York citizens.

13.    This Court may grant declaratory relief, injunctive relief, and other appropriate relief pursuant to 28 U.S.C. § 2201-02 and 5 U.S.C. §§ 702-706.

## FACTUAL ALLEGATIONS

### I.    THE CARES ACT AND ECONOMIC AID ACT.

14.    Due to the massive economic disruption caused by the COVID-19 pandemic, Congress passed the CARES Act in March 2020. *See* Pub. L. No. 116-136, 134 Stat. 281 (2020), codified at 15 U.S.C. § 636(a)(36)-(37).  A primary purpose of the CARES Act was to ensure continued employment and income for employees of American businesses.

15.    Part of the CARES Act included the PPP, which provided SBA with the funding and authority to operate a temporary loan program designed to financially assist small businesses during the COVID-19 pandemic.

16.    The PPP was not created as a standalone program, instead it was added into section 7(a) of the Small Business Act, a pre-existing statutory scheme that authorizes the SBA to issue loans, and guarantee loans made by private lenders, to qualifying businesses.

17.    Under the PPP, the federal government guaranteed low interest loans made by SBA-approved participating lenders to eligible small businesses.

18.    PPP loans issued to eligible small businesses could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.

19.    The initial funding made available under the CARES Act allowed eligible borrowers to receive First Draw PPP loans.

20.    Subsequent funding made available under the Economic Aid Act allowed eligible borrowers to receive Second Draw PPP loans.

21.    Borrowers were deemed eligible for First Draw Loans based on three standards of measurements: (1) average annual receipts; (2) the average number of employees did not exceed 500 employees, or (3) an alternative size standard based on Tangible Net Worth and average Net Income.  *See* 15 U.S.C. § 636(a)(36)(D)(I); 15 U.S.C. § 632(a)(5); 13 C.F.R. § 121.301(b)(1) (2020); 13 C.F.R. § 121.301.

22.    Borrowers were eligible for Second Draw PPP Loans if they: (1) previously received a First Draw PPP loan and used a full amount only for authorized uses; (2) had no more than 300 employees; and (3) could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.  15 U.S.C. § 636(a)(37)(A)(iv)(I).

23.    To determine whether Borrowers had no more than 500 employees for First Draw Loans or had no more than 300 employees for Second Draw loans (collectively, the "Employee-

Based Size Standard"), federal regulations require borrowers to add the average number of their employees with the average number of employees of their affiliates. *See* 13 C.F.R. §121.106(b)(4)(i). Affiliation could exist based on (1) ownership; (2) stock options, convertible securities, and agreements to merge; (3) management; or (4) identity of interest. *See id.;* 13 C.F.R. §121.301(f).

## II.    PLAINTIFFS' FIRST DRAW PPP LOANS.

### A.    ENTITIES THAT RECEIVED FIRST DRAW PPP LOANS

**GFI MANAGEMENT**

24.    GFI Management submitted a Paycheck Program Application Form for a First Draw PPP loan on April 28, 2020.

25.    GFI Management's First Draw PPP Loan, Loan No. 4087497306, was approved on April 29, 2020, and loan proceeds were disbursed in the amount of $100,382.

26.    On July 7, 2021, GFI Management submitted its PPP Loan Forgiveness Application, which its Lender approved on July 14, 2021.

**GFI HOSPITALITY**

27.    GFI Hospitality submitted a Paycheck Program Application Form for a First Draw PPP loan on April 6, 2020.

28.    GFI Hospitality's First Draw PPP Loan, Loan No. 8855987106, was approved on April 15, 2020, and loan proceeds were disbursed in the amount of $140,832.

29.    On July 7, 2021, GFI Hospitality submitted its PPP Loan Forgiveness Application, which its Lender approved on July 8, 2021.

**GFI DEVELOPMENT**

30.     GFI Development submitted a Paycheck Program Application Form for a First Draw PPP loan on April 13, 2020.

31.     GFI Development's First Draw PPP Loan, Loan No. 8839147101, was approved on April 15, 2020, and loan proceeds were disbursed in the amount of $294,750.

32.     On July 8, 2021, GFI Development submitted its PPP Loan Forgiveness Application, which its Lender approved on July 19, 2021.

**GFI CAPITAL RESOURCES**

33.     GFI Capital Resources submitted a Paycheck Program Application Form for a First Draw PPP loan on April 13, 2020.

34.     GFI Capital Resources' First Draw PPP Loan, Loan No. 8837037110, was approved on April 15, 2020, and loan proceeds were disbursed in the amount of $405,884.

35.     On July 8, 2021, GFI Capital Resources submitted its PPP Loan Forgiveness Application, which its Lender approved on July 13, 2021.

**BROADWAY CONSTRUCTION**

36.     Broadway Construction submitted a Paycheck Protection Program Borrower Application Form for a First Draw PPP loan on April 15, 2020.

37.     Broadway Construction's First Draw PPP Loan, Loan No. 9989187102, was approved on April 15, 2020, and loan proceeds were disbursed in the amount of $1,028,307.

38.     On July 12, 2021, Broadway Construction submitted its PPP Loan Forgiveness Application, which its Lender approved on July 13, 2021.

## B.    SBA DENIES FORGIVENESS OF PLAINTIFFS' FIRST DRAW PPP LOANS.

39.    After conducting a review of the Forgiveness Applications, the SBA issued four loan review decisions on February 20, 2024 and one loan review decision on October 25, 2024, denying Plaintiffs' requests for loan forgiveness (the "**First Draw Denials**").  The First Draw Denials issued on February 20, 2024, stated, in pertinent part, that:

> After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.
>
> The aggregate of loans for this affiliation exceeds the maximum allowable number of employees and this loan does not qualify for affiliation waivers.
>
> The Borrower defines itself as a small business; however, their employee count from all known affiliations exceeds 500, along with exceeding the industry receipts-based size standard and Alternative Size Standard.  Therefore, the borrower is deemed ineligible.

The First Draw Denial issued on October 25, 2024, regarding Broadway Construction, provided in pertinent part as follows:

> After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards, and the Borrower does not qualify for affiliation waivers.
>
> The Borrower is affiliated with at least 45 entities based on management with the power to control by Allen Gross, Edith Gross, and/or Allen Gross Irrevocable Trust 2008 through GFI Properties Holdings LLC. The Employee count for the Borrower, together with its affiliates, at time of application was 768 and at the time of forgiveness was 548. Both employee counts exceed the maximum of 500 employees for First Draw PPP loans.
>
> The Borrower does not have an applicable waiver of affiliation based on NAICS Code. The 2019 U.S. Return of Partnership Income Form 1065 for Broadway Construction Group LLC demonstrates a Business Code of 236200 which falls into "Sector 23 – Construction" under the SBA Table of Small Business Size Standards.

Copies of the First Draw Denials are attached as **Composite Exhibit A**.

**C.    PLAINTIFFS' APPEAL TO THE OHA REGARDING THE DENIAL OF FORGIVENESS RELATED TO THEIR FIRST DRAW PPP LOANS.**

40.    Plaintiffs appealed the Denials to OHA (the "**First Draw Appeal Petitions**"). Plaintiffs sought reversal based on documentation establishing that each was eligible for the First Draw PPP Loans under the Alternative Size Standard.

41.    After the Administrative Record was filed, Plaintiffs were able to review—for the first time—SBA's calculations and determined that they were not eligible under the Alternative Size Standard.

42.    Plaintiffs therefore (1) withdrew their argument on the Alternative Size Standard; and (2) filed Supplements to the First Draw Appeal Petitions (the "**Supplements**"), setting forth their eligibility for First Draw PPP Loans under the Employee-Based Size Standard.

43.    Plaintiffs represented that they each had four Operating Company Affiliates and three Multi-Family Housing Affiliates.  The Operating Company Affiliates and Multi-Family Housing Affiliates will be collectively referred to the "**Non-Hospitality Affiliates**."

44.    Plaintiffs also represented that they each had (a) a restaurant affiliate, Breslin Restaurant Group LLC (the "**Restaurant Affiliate**"); and (b) six Hospitality Affiliates, which owned hotels operated by third-party hotel management companies (the "**Third-Party Managers**") pursuant to hotel management agreements (the "**HMAs**").  Copies of the HMAs are attached as **Composite Exhibit B**.

45.    The HMAs make clear that the hotel staff are not employees of the Hospitality Affiliates, but instead are solely employees of the Third-Party Managers, who have direct control over the hotel staff.

46.    The employer federal tax returns (the "**Form 941s**"), or their equivalent, further demonstrated that the hotel staff were employees of the Third-Party Managers.

47.    None of the Third-Party Managers were affiliates of the Plaintiffs.

48.    Because the hotel staff were not the Hospitality Affiliates' employees, Plaintiffs argued that the hotel staff should not be included in the employee count for purposes of determining their eligibility for the First Draw PPP Loans.

49.    There is no dispute that if the hotel staff were excluded, Plaintiffs were eligible for First Draw PPP loans under the Employee-Based Size Standard.

50.    The SBA filed a Response to GFI Capital Resources' Supplement.  No other Responses to the First Draw Appeal Petitions or Supplements were filed by SBA.

**D.    THE INITIAL DECISIONS REGARDING THE FIRST DRAW PPP LOANS.**

51.    In the Initial Decisions, the SBA incorrectly concluded that the 735 hotel staff must be included in the Employee-Based Size Standard calculation (the "**First Draw Initial Decisions**").  According to the SBA, the administrative record demonstrated that the hotel staff were employed by Professional Employer Organizations ("**PEOs**") that were affiliates of Plaintiffs by virtue of common ownership.  Copies of the First Draw Initial Decisions are attached as **Composite Exhibit C**.

52.    The SBA reasoned, in part, as follows:

The record clearly reflects that each and every possible PEO…are majority owned…or at least majority owned/managed/controlled by [a single individual]. This renders any potential PEO entity as an affiliate of the [Borrower] by virtue of the common majority ownership of [].

***

The PEO employees must be counted towards the size of the [Borrower] given their independent affiliation with the [Borrower] through common majority stock ownership/managerial control.[2]

---

[2] Though this precise language does not appear in the January 23, 2025 Decision concerning Broadway Construction's Loan No. 9989187102, the OHA's reasoning in that Decision was substantially the same.

53.     Based on this reasoning, the SBA found that each Plaintiff had more than 500 employees and, as a result, further found that the SBA's First Draw Denials were not based on clear error of fact or law.

E.     **PLAINTIFFS' RECONSIDERATION REQUESTS AND THE RECONSIDERED INITIAL DECISIONS REGARDING THE FIRST DRAW PPP LOANS.**

54.     Plaintiffs filed Petitions for Reconsideration (the "**First Draw Reconsideration Petitions**") and Supplementations of the Record.

55.     Plaintiffs argued that the SBA clearly erred in concluding that (1) the "possible" PEOs are affiliates of Plaintiffs; and (2) the hotel staff should be considered employees for purposes of evaluating Plaintiffs' eligibility under the Employee-Based Size Standard.

56.     In support of the First Draw Reconsideration Petitions, Plaintiffs attached (1) the HMAs and Form 941s to establish that the hotel staff were not employees of the Hospitality Entities; and (2) a Declaration of William Barrett, who attested that (i) the entities identified as "possible" PEOs were not PEOs; and (ii) the possible "PEOs" did not operate the hotels or employ the hotel staff.

57.     No responses to the First Draw Reconsideration Petitions were filed by the SBA.

58.     Reconsidered Initial Decisions were issued on September 6, 2024 (the "**First Draw Reconsidered Initial Decisions**").  Copies of the First Draw Reconsidered Initial Decisions are attached as **Composite Exhibit D**.

59.     In the September 6, 2024 decisions, the SBA admitted that "[g]iven the evidence, the identification of the possible PEOs was in error," but its erroneous finding was "irrelevant to the ultimate outcome of this matter."

60.    According to the SBA, Plaintiffs were ineligible for loan forgiveness because the Hospitality Affiliates and Third-Party Managers (who SBA erroneously identified as PEOs) were affiliated by management based on the language in the HMAs.

61.    The SBA found as follows in the First Draw Reconsidered Initial Decisions:

> The [HMAs] existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs . . . This relationship supports affiliation by management between the Hotel Owners and their respective PEOs . . . Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.[3]

62.    The SBA further found that "[e]ven if affiliation by management did not exist between the Hotel Owners and their respective PEOs," the hotel staff would nonetheless be required to be included in the employee count.  The SBA reached this conclusion because "all Hotel Owners secured PPP First Draw Loans" and must have "used the payroll costs of their respective PEOs to secure each First Draw PPP loan."

63.    Based on this reasoning, the SBA denied the First Draw Reconsideration Petitions.

## III.    PLAINTIFFS' SECOND DRAW PPP LOANS.

### A.    ENTITIES THAT RECEIVED SECOND DRAW PPP LOANS.

### GFI MANAGEMENT

64.    GFI Management submitted a Paycheck Program Application Form for a Second Draw PPP loan on January 12, 2021.

65.    GFI Management's Second Draw PPP Loan, Loan No. 3546578504, was approved on February 24, 2021, and loan proceeds were disbursed in the amount of $60,245.

---

[3] The January 23, 2025 Decision concerning Broadway Construction contains virtually identical language to that used in the September 6, 2024 First Draw Reconsidered Initial Decisions as quoted in this ¶ 61.  But the January 23, 2025 Decision does contain inconsequential differences in phrasing, *e.g.,* use of the word "Appellant" rather than "Petitioner."

66.     On February 25, 2022, GFI Management submitted its PPP Loan Forgiveness Application, which its Lender approved on March 4, 2022.

**GFI HOSPITALITY**

67.     GFI Hospitality submitted a Paycheck Program Application Form for a Second Draw PPP loan on January 26, 2021.

68.     GFI Hospitality's Second Draw PPP Loan, Loan No. 5203288410, was approved on February 8, 2021, and loan proceeds were disbursed in the amount of $140,832.

69.     On March 14, 2022, GFI Hospitality submitted its PPP Loan Forgiveness Application, which its Lender approved on March 15, 2022.

**GFI DEVELOPMENT**

70.     GFI Development submitted a Paycheck Program Application Form for a Second Draw PPP loan on January 22, 2021.

71.     GFI Development's Second Draw PPP Loan, Loan No. 5323228408, was approved on February 8, 2021, and loan proceeds were disbursed in the amount of $294,750.

72.     On March 22, 2022, GFI Development submitted its PPP Loan Forgiveness Application, which its Lender approved on April 5, 2022.

**BROADWAY CONSTRUCTION**

73.     Broadway Construction submitted a Paycheck Program Application Form for a Second Draw PPP loan on January 20, 2021.

74.     Broadway Construction's Second Draw PPP Loan, Loan No. 9408398410, was approved on February 17, 2021, and loan proceeds were disbursed in the amount of $1,028,307.

75.     On March 22, 2022, Broadway Construction submitted its PPP Loan Forgiveness Application, which its Lender approved on March 25, 2022.

**B.  SBA DENIES FORGIVENESS OF PLAINTIFFS' SECOND DRAW PPP LOANS.**

76.  After conducting a review of the Forgiveness Applications, the SBA issued four loan review decisions on February 20, 2024, denying Plaintiffs' requests for loan forgiveness (the "**Second Draw Denials**").  The Denials stated, in pertinent part, that:

> After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.
>
> The aggregate of loans for this affiliation exceeds the maximum allowable number of employees and this loan does not qualify for affiliation waivers.
>
> The Borrower defines itself as a small business; however, their employee count from all known affiliations exceeds the 300-size standard limit.  Second Draw loans are not eligible to use the industry-receipt based or alternative size standards. Therefore, the borrower is deemed ineligible.

Copies of the Second Draw Denials are attached as **Composite Exhibit E**.

**C.  PLAINTIFFS' APPEAL TO THE OHA REGARDING THE DENIAL OF FORGIVENESS RELATED TO THEIR SECOND DRAW PPP LOANS.**

77.  Plaintiffs appealed the Denials to OHA ("**Second Draw Appeal Petitions**"). Plaintiffs sought reversal based on documentation establishing that each was eligible for the Second Draw PPP Loan under the Employee-Based Size Standard.

78.  Plaintiffs represented that they each had four Operating Company Affiliates and three Multi-Family Housing Affiliates.  The Operating Company Affiliates and Multi-Family Housing Affiliates will be collectively referred to the "**Non-Hospitality Affiliates**."

79.  Plaintiffs also represented that they each had (a) a restaurant affiliate, Breslin Restaurant Group LLC (the "**Restaurant Affiliate**"); and (b) six Hospitality Affiliates, which owned hotels operated by third-party hotel management companies (the "**Third-Party Managers**") pursuant to hotel management agreements ("**HMAs**").  Copies of the HMAs are attached as **Composite Exhibit B**.

80.     The HMAs make clear that the hotel staff are not employees of the Hospitality Affiliates, but instead are solely employees of the Third-Party Managers, who have direct control over the hotel staff.

81.     The employer federal tax returns ("**Form 941s**"), or their equivalent, further demonstrated that the hotel staff were employees of the Third-Party Managers.

82.     None of the Third-Party Managers were affiliates of the Plaintiffs.

83.     Because the hotel staff were not the Hospitality Affiliates' employees, Plaintiffs argued that the hotel staff should not be included in the employee count for purposes of determining their eligibility for the Second Draw PPP Loan.

84.     There is no dispute that if the hotel staff were excluded, Plaintiffs were eligible for Second Draw PPP loans under the Employee-Based Size Standard.

85.     The SBA filed a Response to Broadway Construction's Second Draw Appeal Petition. No other Responses to the Second Draw Appeal Petitions were filed by SBA.

### D.     THE INITIAL DECISIONS REGARDING THE SECOND DRAW PPP LOANS.

86.     In the Initial Decisions, the SBA incorrectly concluded that the 735 hotel staff must be included in the Employee-Based Size Standard calculation (the "**Second Draw Initial Decisions**").  According to the SBA, the administrative record demonstrated that the hotel staff were employed by Professional Employer Organizations ("**PEOs**") that were affiliates of Plaintiffs by virtue of common ownership.  Copies of the Second Draw Initial Decisions are attached as **Composite Exhibit F**.

87.     The SBA reasoned, in part, as follows:

> The record clearly reflects that each and every possible PEO...are majority owned...or at least majority owned/managed/controlled by [a single individual]. This renders any potential PEO entity as an affiliate of the [Borrower] by virtue of the common majority ownership of [].

\*\*\*

The PEO employees must be counted towards the size of the [Borrower] given their independent affiliation with the [Borrower] through common majority stock ownership/managerial control.

88.     Based on this reasoning, the SBA found that each Plaintiff had more than 300 employees and, as a result, further found that the SBA's Second Draw Denials were not based on clear error of fact or law.

### E. PLAINTIFFS' RECONSIDERATION REQUESTS AND THE RECONSIDERED INITIAL DECISIONS REGARDING THE SECOND DRAW PPP LOANS.

89.     Plaintiffs filed Petitions for Reconsideration ("**Second Draw Reconsideration Petitions**") and Supplementations of the Record.

90.     Plaintiffs argued that the SBA clearly erred in concluding that (1) the "possible" PEOs are affiliates of Plaintiffs; and (2) the hotel staff should be considered employees for purposes of evaluating Plaintiffs' eligibility under the Employee-Based Size Standard.

91.     In support of the Second Draw Reconsideration Petitions, Plaintiffs attached (1) the HMAs and Form 941s to establish that the hotel staff were not employees of the Hospitality Entities; and (2) a Declaration of William Barrett, who attested that (i) the entities identified as "possible" PEOs were not PEOs; and (ii) the possible "PEOs" did not operate the hotels or employ the hotel staff.

92.     The SBA filed a Response to GFI Management's Second Draw Reconsideration Petition on August 14, 2024.  No other Responses to the Second Draw Reconsideration Petitions were filed by the SBA.

93.     Reconsidered Initial Decisions were issued on September 11, 2024 ("**Second Draw Reconsidered Initial Decisions**").  Copies of the Second Draw Reconsidered Initial Decisions are attached as **Composite Exhibit G**.

94.    The SBA admitted that "[g]iven the evidence, the identification of the possible PEOs was in error," but its erroneous finding was "irrelevant to the ultimate outcome of this matter."

95.    According to the SBA, Plaintiffs were ineligible for loan forgiveness because the Hospitality Affiliates and Third-Party Managers (who SBA erroneously identified as PEOs) were affiliated by management based on the language in the HMAs.

96.    The SBA found as follows in the Second Draw Reconsidered Initial Decisions:

> The [HMAs] existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs . . . This relationship supports affiliation by management between the Hotel Owners and their respective PEOs . . . Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

97.    The SBA further found that "[e]ven if affiliation by management did not exist between the Hotel Owners and their respective PEOs," the hotel staff would nonetheless be required to be included in the employee count.  The SBA reached this conclusion because "all Hotel Owners secured PPP First Draw Loans" and must have "used the payroll costs of their respective PEOs to secure each First or Second Draw PPP loan."

98.    Based on this reasoning, the SBA denied the Second Draw Reconsideration Petitions.

## IV.    AFFILIATION BY MANAGEMENT DOES NOT EXIST

99.    The plain language of the HMAs make clear that the hotel staff are not employees of the Hospitality Affiliates, but instead are solely employees of the Third-Party Managers, who have direct control over all aspects of the hotel staff including, among other things, hiring, supervision, salaries, benefits, and termination.

100.    The SBA's own decisions and guidance also provides that the hotel staff are the third-party managers' employees—not the hotel owners' employees.  *See Appeal of Windsor Court Hotel Partners, LLC*, SBA No. PPP-5292997209, Docket No. PFR-5292997209 (Sept. 13, 2022); SBA FAQs #72 (June 13, 2023).

101.    The SBA nonetheless incorrectly reasoned that the hotel staff had to be counted as Plaintiffs' employees under the affiliation by management test set forth in section 121.301(f)(3), which provides as follows:

> Affiliation based on management.  Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns.  Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns.  **<u>Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.</u>**

13 C.F.R. § 121.301(f)(3) (2021) (emphasis added).

102.    Based on the regulation's plain language, for affiliation by management to exist, the evidence would have to demonstrate that the Third-Party Managers controlled the management of the Hospitality Affiliates through the HMAs.

103.    There is no language in the HMAs that allows the Third-Party Managers to control the management of the Hospitality Affiliates.  Instead, the Third-Party Managers are each wholly independent entities that operate the hotels for the Hospitality Affiliates in exchange for a management fee paid by the Hospitality Affiliates.

104.    Accordingly, the Hospitality Affiliates and Third-Party Managers are not affiliated by management.

105.    Therefore, the hotel staff are not employees of the Hospitality Affiliates and should not be included in the calculation to determine whether Plaintiffs met the Employee-Based Size Standard.

## V.    THE CARES ACT DOES NOT REQUIRE THAT THE HOTEL STAFF BE DEEMED EMPLOYEES OF THE HOSPITALITY AFFILIATES

106.    The SBA's finding that "[e]ven if affiliation by management did not exist…a unique feature of the CARES Act and PPP would require the inclusion of the [Third-Party Managers'] employees in the Hotel Owner's employee count" is also arbitrary and capricious.

107.    There is no provision in the CARES Act or its implementing regulations that allows for non-employees to be included in calculating the number of employees under the Employee-Based Size Standard.

108.    Instead, SBA's decisions and guidance merely allow hotel owners applying for Second Draw PPP loans to include the payroll costs of the hotel staff that it remits to third-party managers to be included in their loan amount if the third-party managers did not receive PPP loans for such costs.  SBA's June 13, 2023 guidance states:

> [P]ayroll costs paid by a borrower to a third-party payer **for the third-party payer's employees** to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.

SBA FAQs #72 (June 13, 2023) (emphasis added).

109.    This guidance does not state that a borrower—who is affiliated with a hotel owner—must include the hotel owner's third-party manager's hotel staff in its employee count.

110.    In fact, there is no law that allows for non-employees to be included in the Employee-Based Size Standard calculation.

111.    Therefore, the SBA's finding that the hotel staff—who are neither Plaintiffs' employees nor employees of their affiliates—must nevertheless be included as employees in determining the Employee-Based Size Standard is not authorized by and is, in fact, contrary to the CARES Act and applicable regulations.

## COUNT I
## VIOLATION OF THE ADMINISTRATIVE
## PROCEDURE ACT, 5 U.S.C. § 706(2)(A)
### (SBA's Decisions Had No Basis In Fact, Was Arbitrary and Capricious, An Abuse of Discretion And Otherwise Not In Accordance With The Law)

112.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

113.    The SBA's October 7, 2024, October 11, 2024, and February 24, 2025 final decisions constitute final agency decisions under 13 C.F.R. § 134.1211(g), and the APA provides that a reviewing court must "hold unlawful and set aside agency action…found to be…arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(a).

114.    The SBA's determination that Plaintiffs are ineligible for loan forgiveness because they failed to meet the Employee-Based Size Standard has no basis in fact, is arbitrary and capricious, an abuse of discretion and not otherwise in accordance with applicable law.

115.    Specifically, under the CARES Act, for First Draw PPP Loans, business concerns are eligible to receive a covered loan if it employs not more than the greater of 500 employees.

116.    Here, none of the Plaintiffs had more than 500 employees when both their employees and their affiliates employees are added together.  Therefore, each of the Plaintiffs was eligible for First Draw PPP loans under the Employee-Based Size Standard.

117.    Further, under the Economic Aid Act, for Second Draw PPP Loans, business concerns are eligible to receive a covered loan if it employs not more than the greater of 300 employees.

118.    Here, none of the Plaintiffs had more than 300 employees when both their employees and their affiliates employees are added together.  Therefore, each of the Plaintiffs was eligible for Second Draw PPP loans under the Employee-Based Size Standard.

119.    Because Plaintiffs were unlawfully determined to be ineligible for loan forgiveness under the Employee-Based Size Standard, the SBA's final decisions adversely affected and will continue to adversely affect Plaintiffs.

120.    The damage to Plaintiffs is substantial and may be irreparable if the SBA's final decisions are not reversed and vacated.

## COUNT II
## DECLARATORY JUDGMENT

121.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

122.    This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

123.    There is an actual judicial controversy between the parties as to the correctness of SBA's application of the Employee-Based Size Standard.

124.    The controversy is of sufficient immediacy to warrant the issuance of a declaratory judgment.

125.    A declaratory judgment will effectively settle the controversy between the parties regarding their legal rights, and thus obviate any future harm or uncertainty.

126.     As a result of the foregoing, Plaintiffs are entitled to a declaratory judgment that the hotel staff employed by a third-party manager under a hotel management agreement with a hospitality affiliate is not includable in the each of the Plaintiff's employee counts for purposes of determining the Employee-Based Size Standard.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs, GFI Management, GFI Hospitality, GFI Development, GFI Capital Resources, and Broadway Construction request judgment against Defendants in their favor as follows:

1.     An order vacating and setting aside the SBA's final decisions as arbitrary, capricious, and contrary to law;

2.     A declaration that the hotel staff employed by a third-party manager under a hotel management agreement with a hospitality affiliate is not includable in the Plaintiffs' employee counts for purposes of determining the Employee-Based Size Standard;

3.     An injunction to prevent irreparable harm to Plaintiffs as a result of the SBA's final decisions;

4.     A remand with instruction to the SBA to approve forgiveness of Plaintiffs' First Draw PPP loans;

5.     Reimbursement to Plaintiffs of any sums repaid on any of the First Draw PPP loans, plus interest, in an amount to be proven;

6.     A remand with instruction to the SBA to approve forgiveness of Plaintiffs' Second Draw PPP loans;

7.     Reimbursement to Plaintiffs of any sums repaid on any of the Second Draw PPP loans, plus interest, in an amount to be proven;

8.    Award Plaintiffs costs and reasonable attorney's fees to the extent permitted by law; and

9.    Grant such other relief as this Court may deem just and proper.


DATED:  February 25, 2025                    Respectfully submitted,

                                             GREENBERG TRAURIG, LLP

                                             By:    /s/ *Daniel P. Filor*
                                                    DANIEL P. FILOR
                                                    CHARLES J. BERK
                                                    One Vanderbilt Avenue
                                                    New York, New York 10017
                                                    Telephone: (212) 801-9200
                                                    Email: filord@gtlaw.com
                                                    berkc@gtlaw.com

                                                    *Counsel for Plaintiffs*