UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
GFI MANAGEMENT SERVICES INC. et al.,                          :
                                        Plaintiffs,           :
                                                              :          24 Civ. 9317 (LGS)
                  -against-                                    :
                                                              :          **OPINION & ORDER**
KELLY LOEFFLER et al.,                                        :
                                        Defendants.  :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs GFI Management Services Inc., GFI Hospitality LLC, GFI Development

Company LLC, GFI Capital Resources Group Inc. and Broadway Construction Group LLC bring

this action against Defendants Kelly Loeffler and the United States Small Business

Administration ("SBA").  Plaintiffs seek review under the Administrative Procedure Act (the

"APA") of the orders of the Office of Hearings and Appeals (the "OHA") denying Plaintiffs'

appeals of Paycheck Protection Program ("PPP") loan review decisions issued by SBA.

Specifically, Plaintiffs seek review of decisions that Plaintiffs were ineligible for the PPP loans

they obtained and therefore were not entitled to forgiveness of those loans.  The parties cross-

move for summary judgment.  For the following reasons, Defendants' motion is granted, and

Plaintiffs' motion is denied.

I.      BACKGROUND

        A.      COVID-19 Loan Programs

        In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security

Act (the "CARES Act") "to, in part, alleviate the [COVID-19] pandemic's substantial economic

effects on small businesses."  *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 409 (2d Cir.

2022).[1] Section 1102 of the CARES Act establishes the PPP, a temporary loan program that aimed to "provid[e] small businesses with the funds necessary to meet their payroll and operating expenses and therefore keep workers employed." *Id.* (citing 15 U.S.C. § 636(a)(36)). A business generally could qualify for a PPP loan if the business had no more than 500 employees, though SBA provides industry-specific size standards and an alternative size standard. 15 U.S.C. § 636(a)(36)(D)(i).

Congress later enacted the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Economic Aid Act"), which made a second round of PPP loans available to businesses that, among other things, received a PPP loan under the CARES Act and had no more than 300 employees. 15 U.S.C. § 636(a)(37)(A)(iv)(I). Loans under the CARES Act are referred to as "First-Draw Loans." Loans under the Economic Aid Act are referred to as "Second-Draw Loans."

### B.    Plaintiffs' Loans

The following facts are drawn from the administrative record because "a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *accord Teleanu v. Koumans*, 480 F. Supp. 3d 567, 576 (S.D.N.Y. 2020).

Plaintiffs are five affiliated companies owned by Allen Gross or Edith Gross (the "Gross Family"), which collectively employ 76 people. Plaintiffs have four other affiliates: Adara Buyer IV LLC, Deerfield Beach Apartments LLC, River Market West LLC and Breslin

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Restaurant Group LLC, which employ a total of 91 people.  Plaintiffs' position is that they have a total of 167 employees (76 + 91) for purposes of SBA's size standards.

Plaintiffs are also affiliated with six other businesses owned by the Gross Family:  1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, Idlewild Realty LLC, 88 Madison Hotel Operator LLC, 5 Beekman JV LLC and 45 West Orchard Park Drive LLC (collectively, the "Hotel Owner Affiliates"), each of which owns a hotel.  The hotels of the Hotel Owner Affiliates are staffed by 735 workers from one of four "Hotel Management Companies" (Ace Hotel Group, Crescent Hotel Management Services, Highgate Hotels, L.P. and Thompson Hotels, a subsidiary of Hyatt Corporation).  Pursuant to management agreements between individual Hotel Owner Affiliates and individual Hotel Management Companies, the Hotel Owner Affiliates reimburse the Hotel Management Companies for the wages of these 735 workers.  In their submissions to SBA (including certified SBA Form 3511 Affiliation Worksheets), Plaintiffs repeatedly listed the 735 Hotel Management Company staff members as employees of the Hotel Owner Affiliates.

Plaintiffs received a combined total of approximately $3.5 million in PPP loans through five First-Draw Loans and four Second-Draw Loans.  These nine PPP loans are the only loans at issue in this case.  The Hotel Owner Affiliates also received more than $20 million in PPP loans based on payroll costs incurred paying these 735 employees.  Those loans are not at issue in this case, except for context.

**C.    SBA Decisions**

After reviewing Plaintiffs' loan forgiveness applications, SBA issued nine decisions, one for each of Plaintiffs' PPP loans -- eight decisions on February 20, 2024, and one decision on October 25, 2024.  In each decision, SBA found Plaintiffs ineligible for the PPP loans and denied

3

forgiveness.  Each decision found that each Plaintiff's "business, or together with its affiliates, exceed[ed] the maximum allowable number of employees" and that each Plaintiff did not satisfy other standards (not at issue here) to qualify their PPP loans as eligible for forgiveness.

Plaintiffs appealed the denials to the OHA, seeking reversal of SBA's decisions.  On appeal to the OHA, Administrative Law Judge Brian J. Haring (the "ALJ") affirmed SBA's decisions finding Plaintiffs ineligible for loan forgiveness.  The ALJ found that Plaintiffs were affiliated with the Hotel Management Companies through common ownership and, consequently, that Plaintiffs with their affiliates far exceeded the 500-employee limit for First-Draw Loans and the 300-employee limit for Second-Draw Loans.  Plaintiffs petitioned for reconsideration on all decisions except for the decision on Broadway Construction Group LLC's First-Draw Loan.  On reconsideration, the ALJ again affirmed SBA in eight Reconsidered Initial Decisions (together with the decision on Broadway Construction Group LLC's First-Draw Loan, the "Final OHA Decisions").[2]

In the Final OHA Decisions, the ALJ found that Plaintiffs had exceeded the size limit for their loans for two independent reasons.  First, the ALJ found that Plaintiffs were affiliated with the Hotel Management Companies through management (rather than ownership), because the Hotel Owner Affiliates had "delegated all aspects of running their respective hotels" to the Hotel Management Companies.  Plaintiffs with their affiliates therefore exceeded the relevant employee limit.  Second, the ALJ reasoned that "[i]t would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of . . . employees, but not consider the actual number of . . . employees supported

---

[2] The Final OHA Decisions correspond to Plaintiffs' nine PPP loans issued to five entities.  All five received First-Draw Loans and four received Second-Draw Loans.  All of the Final OHA Decisions contain substantially the same operative language that this Opinion considers.

4

by the loan." The ALJ concluded that with the 735 hotel employees, Plaintiffs "far exceeded" the 500-employee size limitation for First-Draw Loans and 300-employee size limitation for Second-Draw Loans. Because each Plaintiff was "ineligible for the PPP loan at issue," it "may not receive loan forgiveness," and, therefore, the "SBA did not commit error in denying loan forgiveness." Plaintiffs filed the instant Complaint and Petition for Judicial Review.

## II.    STANDARD

### A.    Review of Agency Action

Where, as here, "a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and the entire case on review is a question of law." *Macks USA, Inc. v. U.S. Dep't of Lab.*, No. 23 Civ. 7476, 2024 WL 4728902, at *1 (S.D.N.Y. Nov. 8, 2024). The APA directs that agency actions be "h[e]ld unlawful and set aside" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

> An agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022). "Under this narrow standard of review, a court is not to substitute its judgment for that of the agency." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020). A court's review of the agency decision is limited to examining "the existing administrative record" and "evaluating the agency's contemporaneous explanation." *Kakar*, 29 F.4th at 132.

"[S]ummary judgment is appropriate in APA cases because the questions on review" -- "whether the agency acted arbitrarily, capriciously or in some other way that violates 5 U.S.C.

5

§ 706" -- "are purely legal and are amenable to summary disposition." *Macks USA, Inc.*, 2024 WL 4728902, at *1.  A court should

> grant summary judgment to the Government unless it determines by a preponderance of the evidence that the agency has *not* considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a rational connection between the facts found and the choice made.

*Cuckic v. Jaddou*, No. 21 Civ. 8395, 2023 WL 2586031, at *4 (S.D.N.Y. Mar. 21, 2023).  "When a petitioner bears the burden of proof, his failure to adduce evidence can itself constitute the substantial evidence necessary to support the agency's challenged decision." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020).

### B.    PPP Loan Eligibility and Forgiveness

"[T]he CARES Act places the PPP under Section 7(a) of the Small Business Act." *Springfield Hosp., Inc.*, 28 F.4th at 410.  Unlike ordinary Section 7(a) loans, PPP loans are "potentially forgivable" if at least sixty percent of the "loaned funds [were] used for specified expenses, such as payroll." *Id.* at 409.

In general, SBA is authorized to provide loans "to any qualified small business concern." 15 U.S.C. § 636(a).  A qualified small-business concern is a business that, among other things, meets SBA's "size standards," which are expressed in terms of the business's number of employees or its annual receipts.  15 U.S.C. § 632(a)(1)-(2); 13 C.F.R. §§ 121.101, 121.201. SBA publishes industry-specific codes under the North American Industry Classification System and promulgates employee- or receipt-based "size standards" for each code.  13 C.F.R. § 121.201; 48 C.F.R. § 19.102(a)(1); 13 C.F.R. § 121.101(a)-(b).  The general 500-employee limit for First-Draw Loans and 300-employee limit for Second-Draw Loans are the relevant thresholds here.  *See* 15 U.S.C. § 636(a)(36)(D)(i)(I) (500-employee limit for First-Draw Loans); *id.* § 636(a)(37)(A)(iv)(I)(aa) (300-employee limit for Second-Draw Loans).  When determining

6

a borrower's size, SBA considers the borrower's affiliation with other entities, aggregating, among other things, the employees of the borrower and its affiliates.  13 C.F.R. §§ 121.103(a)(6), 121.106(b)(4)(i).

PPP borrowers are eligible to seek forgiveness of the loan amount if the proceeds were spent on eligible expenses, including payroll.  15 U.S.C. §§ 636m(b), 636(a)(37)(J)(ii).  SBA's interpretive guidance clarifies that eligible borrowers can seek reimbursement for payments for payroll to professional employee organizations "or similar payroll providers."  *See* SBA, *Paycheck Protection Program Loans: Frequently Asked Questions (FAQs)* #10 (May 9, 2024)[3] ("FAQs").  These include "management compan[ies]" that "operate[] the [borrower's] business." *Id.* #72.

## III.    DISCUSSION

The Final OHA Decisions are affirmed.  In substance, they rest on two grounds.  The first is that the Hotel Management Companies are "affiliates" (through management) of the Hotel Owner Affiliates and thus are affiliates of Plaintiffs.  The second is that the Hotel Management Companies' employees are "employees" of the Hotel Owner Affiliates under the "totality of circumstances" test for employees.  Under either rationale, the employees of the Hotel Management Companies are included in the total number of Plaintiffs' employees.  Both rationales are sound, and neither is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

The first ground for the Final OHA Decisions depends on who are affiliates. "Affiliation" exists when an entity could control another entity through, among other things,

---

[3] https://www.sba.gov/sites/default/files/2024-05/FAQ%20PPP%20for%20Borrowers%20 and%20Lenders%20Questions%201-73%20%28FINAL%205-9-24%29%20508.pdf [https://perma.cc/4S47-92DZ].

ownership or management.  13 C.F.R. § 121.301(f), (g).  SBA interpretive guidance describes

various circumstances that qualify as affiliation by management.  These include "where a

single . . . entity controls the management of the applicant concern through a management

agreement."  SBA, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck

Protection Program* 2 (Apr. 3, 2020).[4]  The ALJ relied on this guidance to determine correctly

that the management companies are "affiliates" of the Hotel Owner Affiliates (and thus

Plaintiffs) through management.  The Final OHA Decisions observe that "[t]he Operating

Agreements existing at the time [Plaintiffs] applied for this loan reflect the Hotel

Owner[ Affiliates] contractually delegated all aspects of running their respective hotels to their

respective [Hotel Management Companies]."  The Final OHA Decisions also note that the Hotel

Owner Affiliates apparently have no employees of their own.  Based on this reasoning,

Plaintiffs' affiliates include the Hotel Management Companies.  Consequently, Plaintiffs have at

least 902 employees and were ineligible for the PPP loans when they were made and are not

entitled now to have them forgiven.

The second ground for the Final OHA Decisions rests on the definition of "employees."

The issue is whether those who work for the Hotel Management Companies are considered

"employees" of the Hotel Owner Affiliates, which Plaintiffs acknowledge are their affiliates.  A

federal regulation determines how SBA calculates the number of employees:

> In determining a concern's number of employees, SBA counts all individuals
> employed on a full-time, part-time, or other basis.  This includes employees
> obtained from a temporary employee agency, professional employee organization
> or leasing concern.  SBA will consider the totality of the circumstances . . . in
> determining whether individuals are employees of a concern.

---

[4] https://www.sba.gov/sites/default/files/2020-06/Affiliation%20rules%20overview%20%28
for%20public%29%20v2-508.pdf [https://perma.cc/E7KJ-YDX3].

13 C.F.R. § 121.106(a).  This definition includes employees who are provided by certain types of third parties.  The statement that SBA will consider the "totality of the circumstances" supports the conclusion that the list of third parties is not exhaustive and that SBA can and will weigh all of the circumstances to determine whether employees obtained from a third party are employees of an entity.

Here, the Hotel Management Companies provided all of the staff who work at the Hotel Owner Affiliates.  The Hotel Management Companies and the types of third parties listed in the regulation all have in common that they provide employees to another entity, and those employees are consequently deemed to be employees of that other entity -- here, the Hotel Owner Affiliates.

The Final OHA Decisions consider that the Hotel Owner Affiliates had obtained their PPP loans (which are not at issue here) by presenting their need to pay the workers supplied by the Hotel Management Companies, and therefore the "expenses directly related" to the Hotel Management Company employees used to secure the loans "must be tied to the actual number of . . . employees supported by their loan when determining size."  As the Final OHA Decisions note, Plaintiffs repeatedly listed the 735 hotel staff as employees of the Hotel Owner Affiliates in their submissions to SBA, including in certified submissions.  The Hotel Owner Affiliates received more than $20 million in PPP loans based on payroll costs associated with the same employees.  Considering the totality of the circumstances, the Final OHA Decisions' conclusion that the Hotel Management Companies' employees should be deemed "employees" of the Hotel Owner Affiliates is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Plaintiffs argue that the hotel staff were not actually employees of the Hotel Owner Affiliates and therefore should be excluded from the employee-based size standard.  This argument is beside the point.  The question here is whether the Hotel Management Company employees should be *deemed* employees of the Hotel Owner Affiliates for purposes of the PPP loans.  The Final OHA Decisions properly conclude that the 735 staff members who operated the Hotel Owner Affiliates' hotels should be counted when determining Plaintiffs' PPP loan eligibility for the reasons explained above.

Plaintiffs cite *Windsor Court*[5] and related SBA guidance, as they did below, to argue that the hotel staff were employees of the Hotel Management Companies rather than the Hotel Owner Affiliates.  That argument misconstrues *Windsor Court* and subsequent guidance.  *Windsor Court* concerned whether payments to management companies were eligible payroll costs for determining the maximum loan amount to the hotel owner, not whether the management companies' employees should be counted for determining the hotel's size.  *Windsor Court*, at 3-4.

After *Windsor Court*, SBA published further guidance, which the Final OHA Decisions cite along with *Windsor Court*.  The guidance explained that a hotel's payments to a management company for its staff to operate the hotel could be eligible payroll costs for calculating the maximum amount the hotel could receive in a PPP loan.  *See* FAQ #72. However, the hotel has that option only "as long as" the management company did not itself apply to receive a PPP loan and "all other PPP requirements are met." *Id.*  Those requirements include the eligibility criteria, such as the employee-size standard at the heart of this case.  15

---

[5] *Appeal of Windsor Ct. Hotel Partners, LLC*, SBA No. PPP-5292997209, Dkt. No. PFR-5292997209 (Sep. 13, 2022), www.sba.gov/sites/default/files/2023-10/Windsor%20Court%20%20PFR%20Decision-Redacted-R.pdf [https://perma.cc/RP88-SNUH].

U.S.C. § 636(a)(36)(D)(i)(I).  As the ALJ noted, excluding the Hotel Management Companies' staff would allow businesses to support more than 500 or 300 employees with PPP loans, undermining the intent of the CARES Act.

Here, the ALJ found that because the Hotel Owner Affiliates "contractually delegated all aspects of running their respective hotels" to the Hotel Management Companies, the two groups were affiliated by management, and thus are "affiliates" of Plaintiffs.  The ALJ separately found, under the "totality of circumstances" test for employees, that the Hotel Management Companies' staff are "employees" of the Hotel Owner Affiliates.  Neither conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Either finding is sufficient to support the ALJ's conclusion that Plaintiffs were ineligible for the $3.5 million amount of PPP loans Plaintiffs obtained and therefore were not entitled to forgiveness of those loans.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is **DENIED**, and Defendants' motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 29 and 32 and to close the case.

Dated: March 30, 2026
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　LORNA G. SCHOFIELD
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

11